**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION**

**JOHN WESLEY VITITOE,**

    **Plaintiff,**

                              **Civil Action 2:20-cv-5519**

    **v.**                            **Judge Sarah D. Morrison**

                              **Magistrate Judge Chelsey M. Vascura**

**COMMISSIONER OF SOCIAL SECURITY,**

    **Defendant.**

## REPORT AND RECOMMENDATION

Plaintiff, John Wesley Vititoe, brings this action under 42 U.S.C. § 405(g) for review of a final decision of the Commissioner of Social Security ("Commissioner") denying his applications for Disability Insurance benefits and Supplemental Security Income benefits. This matter is before the undersigned for a Report and Recommendation on Plaintiff's Statement of Errors (ECF No. 17), the Commissioner's Memorandum in Opposition (ECF No. 21), Plaintiff's Reply (ECF No. 22), the administrative record (ECF No. 14), and the supplemental administrative record (ECF No. 15). For the following reasons, the undersigned **RECOMMENDS** that the Court **OVERRULE** Plaintiff's Statement of Errors and **AFFIRM** the Commissioner's determination.

## I.      BACKGROUND

Plaintiff protectively filed his application for Disability Insurance benefits (Medicare benefits only) and Supplemental Security Income benefits on September 22, 2017, alleging that he became disabled on August 31, 2017. (R. 199–214.) On July 29, 2019, following administrative denials of Plaintiff's application initially and on reconsideration, a video hearing

was held before Administrative Law Judge Colleen M. Mamelka (the "ALJ"). (R. 890–927.)[1]

Plaintiff, represented by counsel, appeared and testified, as did vocational expert David

Huntington (the "VE"). On October 1, 2019, the ALJ issued her decision denying benefits. (R.

14–36.) On August 24, 2020, the Appeals Council declined to review that decision such that it

became final. (R. 1–7.) Plaintiff seeks judicial review of the ALJ's unfavorable determination.

In his Statement of Errors, Plaintiff asserts the ALJ's RFC contains a work-preclusive limitation.

He alternatively argues that the ALJ failed to sufficiently explain how she arrived at his RFC

determination. (ECF No. 16, at 7–8.)

## II.     THE ALJ'S DECISION

The ALJ found that Plaintiff was not disabled within the meaning of the Social Security

Act. (R. 14–36.) First, the ALJ found that Plaintiff met the nondisability requirements under the

Act and had sufficient coverage to be insured for Disability Insurance benefits. (R. 20.) At step

---

[1] The supplemental record in this case (ECF No. 15) contains only the July 29, 2019 hearing
transcript, and is paginated R. 890–927. The rest of the administrative record (ECF No. 14) is
paginated R. 1–889. The citations in this opinion do not differentiate between the two filings.

one of the sequential evaluation process,[2] the ALJ found that Plaintiff had not engaged in

substantial gainful activity since August 31, 2017, his alleged disability onset date.  (*Id.*)  At step

two, the ALJ found that Plaintiff had the following severe impairments: degenerative disc disease

with lumbar radiculopathy, facet arthropathy, and foraminal stenosis status post decompression

and fusion; post-laminectomy syndrome; piriformis syndrome; degenerative joint disease; and

depression.  (*Id.*)  At step three, the ALJ found that Plaintiff did not have an impairment or

combination of impairments that met or medically equaled the severity of one of the listed

impairments described in 20 C.F.R. Part 404, Subpart P, Appendix 1.  (R. 22.)

The ALJ then set forth Plaintiff's residual functional capacity ("RFC")[3] as follows:

---

[2] Social Security Regulations require ALJs to resolve a disability claim through a five-step
sequential evaluation of the evidence.  *See* 20 C.F.R. § 404.1520(a)(4).  Although a dispositive
finding at any step terminates the ALJ's review, *see Colvin v. Barnhart*, 475 F.3d 727, 730 (6th
Cir. 2007), if fully considered, the sequential review considers and answers five questions:

> 1. Is the claimant engaged in substantial gainful activity?
>
> 2. Does the claimant suffer from one or more severe impairments?
>
> 3. Do the claimant's severe impairments, alone or in combination, meet or equal the
> criteria of an impairment set forth in the Commissioner's Listing of Impairments, 20
> C.F.R. Subpart P, Appendix 1?
>
> 4. Considering the claimant's residual functional capacity, can the claimant perform his or
> her past relevant work?
>
> 5. Considering the claimant's age, education, past work experience, and residual
> functional capacity, can the claimant perform other work available in the national
> economy?

*See* 20 C.F.R. § 404.1520(a)(4); *see also Henley v. Astrue*, 573 F.3d 263, 264 (6th Cir. 2009);
*Foster v. Halter*, 279 F.3d 348, 354 (6th Cir. 2001).

[3] A claimant's RFC is an assessment of "the most [he] can still do despite [his] limitations."  20
C.F.R. § 4040.1545(a)(1).

> After careful consideration of the entire record, the [ALJ] finds that the [Plaintiff] has the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a) except he requires a sit/stand option at will provided he is not off-task more than 10% of the workday. He can stand and walk up to four hours with the use of a single hand-held assistive device for balance and ambulation. He is limited to frequent rotation/flexion of the neck. He can occasionally climb ramps and stairs, balance, stoop, kneel, crouch, and crawl. He can never climb ladders, ropes, or scaffolds. He can never work at unprotected heights, near dangerous moving machinery, in fast-paced production, or with vibratory tools. Work is limited to simple, routine, and repetitive tasks.

(R. 23–24.)  In explaining how she assessed Plaintiff's RFC, the ALJ found that although his medically-determinable impairments could be expected to cause at least some of his alleged symptoms, his statements regarding the intensity, persistence, and limiting effects of his symptoms were not entirely consistent with the record evidence.  (R. 26.)  At step four of the sequential evaluation, relying in part on the VE's testimony, the ALJ found that Plaintiff was unable to perform his past relevant work as a meter reader, landscape specialist, or a hand packager.  (R. 29.)  At step five, the ALJ found that in light of Plaintiff's age, education, work experience, and RFC, jobs existed in significant numbers in the national economy that he could perform, including as a call out operator, document preparer, or table worker.  (R. 29–30.)  The ALJ therefore concluded that Plaintiff was not disabled under the Act.  (R. 30.)

### III.    STANDARD OF REVIEW

When reviewing a case under the Social Security Act, the Court "must affirm the Commissioner's decision if it 'is supported by substantial evidence and was made pursuant to proper legal standards.'"  *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. 2009) (quoting *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007)); *see also* 42 U.S.C. § 405(g) ("[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . .").  Under this standard, "substantial evidence is defined as 'more than a scintilla of evidence but less than a preponderance; it is such relevant

evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Rogers*, 486 F.3d at 241 (quoting *Cutlip v. Sec'y of Health & Hum. Servs.*, 25 F.3d 284, 286 (6th Cir. 1994)).

Although the substantial evidence standard is deferential, it is not trivial.  The Court must "take into account whatever in the record fairly detracts from [the] weight" of the Commissioner's decision. *TNS, Inc. v. NLRB*, 296 F.3d 384, 395 (6th Cir. 2002) (quoting *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 487 (1951)).  Nevertheless, "if substantial evidence supports the ALJ's decision, this Court defers to that finding 'even if there is substantial evidence in the record that would have supported an opposite conclusion.'" *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (quoting *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997)).  Finally, even if the ALJ's decision meets the substantial evidence standard, "a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right." *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2007).

## IV.    ANALYSIS

Plaintiff's disability claim is largely based on his alleged back pain and numbness in his left leg. (R. 24–26; 904–907; 915.)  As set forth above, Plaintiff maintains reversal is required because the RFC contains a work-preclusive limitation.  More specifically, Plaintiff maintains that the ALJ's determination that he requires an at-will sit/stand option "provided he is not off-task more than 10% of the workday" is work preclusive.  Plaintiff alternatively argues that reversal is required because the ALJ failed to sufficiently explain why she included this particular limitation in the RFC.  The undersigned considers these contentions of error in turn.

### A.    The RFC Does Not Include a Work-Preclusive Limitation.

At the July 29, 2019 video hearing, the ALJ questioned the VE about a hypothetical

5

individual with Plaintiff's vocational profile and a variety of work limitations.  After the VE testified that such an individual could perform jobs in the national economy (identifying three specific jobs by way of example), the ALJ asked: "If this individual required a sit/stand opinion at will, provided not off-task more than ten percent of the workday[,] [w]hat impact, if any, would it have on the jobs provided?"  (R. 923.)  The VE responded that this additional limitation would not impact the availability of the jobs previously identified.  On cross-examination, Plaintiff's counsel asked whether the VE's testimony would be impacted if the individual was off task greater than ten percent of the workday "because of pain or other symptoms."  (R. 924–25.)  The VE responded that, based upon his experience, the hypothetical individual could be off task up to 15% of the day without eroding the jobs available.  When asked about larger, unscheduled breaks, such as "25-minute additional breaks as opposed to, you know, a few minutes here, a few minutes there," the VE testified that these larger breaks would be work preclusive, explaining that breaks "over the nine minutes per hour for example" would become an accommodation that would not be tolerated.  (R. 924–25.)

The ALJ reasonably relied upon the VE's testimony to conclude that Plaintiff could perform work that exists in significant numbers in the national economy such that he is not disabled as defined in the Social Security Act.  An ALJ may rely upon a VE's testimony as substantial evidence that a claimant retains the vocational qualifications to perform specific jobs "if the question accurately portrays [the claimant's] individual mental and physical impairments." *Ealy v. Comm'r of Soc. Sec.*, 594 F.3d 504, 512–13 (6th Cir. 2010) (quoting *Howard v. Comm'r of Soc. Sec.*, 276 F.3d 235, 238 (6th Cir. 2002)).  Here, in response to questions from the ALJ, the VE explicitly testified that a hypothetical individual with Plaintiff's vocational profile and the

RFC limitations the ALJ ultimately assessed could perform specific jobs that exist in significant numbers in the national economy.

Plaintiff's contention that the limitation that "he requires a sit sit/stand option at will provided he is not off-task more than 10% of the workday" is work preclusive is unavailing. When asked about this limitation, the VE testified it was *not* work preclusive.  Indeed, the VE testified that such an individual could be off task up to 15% of the workday without eroding the jobs identified.  Plaintiff offers no authority demonstrating that the ALJ erred in relying on the VE's testimony on this issue.  Instead, Plaintiff appears to advocate that the at-issue off-task limitation should be construed not as it is commonly used and understood, but to mean that Plaintiff could require longer, unscheduled breaks throughout the day.  (*See* R. 925 (offering, by way of example, a limitation to two 25-minute additional breaks).)  But again, Plaintiff offers no authority in support of this interpretation of the off-task limitation.  Nor does he cite any record evidence that could support a finding that he required long, unscheduled off-task breaks. Moreover, consideration of the wording of the ALJ's RFC assessment, together with the record evidence, reflects that the ALJ included the off-task time to accommodate that Plaintiff may require significant—but less than 10% of the workday—off-task time to transition from sitting to standing.  Consistently, Plaintiff acknowledges that his need to shift positions throughout the day would impact his ability to remain on task.  (*See* Pl.'s Statement of Errors 10, ECF No. 16 ("Plaintiff's pain, which causes him to change position every few minutes, at will . . . would have a significant impact upon his ability to remain on task . . . .").)

**B.    The ALJ Did Not Err in Failing to Sufficiently Explain the RFC Determination.**

In his alternative contention of error, Plaintiff takes the unusual position that reversal is required because the ALJ included an *additional limitation*—that is, a limitation that no medical

source opined he required—without explaining why that limitation was included.

The undersigned finds that the ALJ did not err in her RFC determination and articulation. It is true that an ALJ must "explain [her] decision with sufficient clarity so as to allow for meaningful review." *Rogers,* 486 F.3d at 249.  But the ALJ did so here.  Specifically, the ALJ offered a detailed discussion of the record evidence, including Plaintiff's testimony; his self-reports to medical providers; his treatment examination notes; objective medical testing results, such as his MRI and x-ray scans; his surgical history; his use of a cane to walk; and medical opinion evidence, including a work status report completed by Plaintiff's treating source.  The ALJ explained why she concluded that Plaintiff's allegations were not fully consistent with the record evidence and identified which limitations she found credible and the weight she accorded to the opinion evidence.  *See Burton v. Comm'r of Soc. Sec.,* No. 3:19-cv-313, 2021 WL 388768, at *3–4 (S.D. Ohio Feb. 4, 2021) (rejecting claimant's assertion that 5–8% off-task limitation was arbitrary, explaining that "although he ALJ did not specifically justify this time-off-task range, she did engage in a meaningful assessment of Plaintiff's impairments that may affect her ability to remain on task"); *Hoffman-Shaw v. Comm'r of Soc. Sec.,* No. 2:18-cv-836, 2019 WL 1986521, at *10–11 (S.D. Ohio May 6, 2019) (same).  Significantly, Plaintiff does not challenge the ALJ's consideration and weighing of the evidence, but instead takes issue with the ALJ's inclusion of an *additional* limitation that appears otherwise unsupported by the evidence.

The fact that no medical source opined that Plaintiff required an off-task limitation does not require reversal.  *See Reinartz v. Comm'r of Soc. Sec.*, 795 F. App'x 448, 449 (6th Cir. 2020) (citing 20 C.F.R. § 404.1527(d)(2)) (ALJ may assess work-capacity limitation without medical opinion recommending the same); *Howbert v. Comm'r of Soc. Sec.,* No. 2:20-cv-3587, 2021 WL 2469546, at *7 (S.D. Ohio June 17, 2021) (finding no error where the ALJ included an off-task

limitation even though no medical source opined that the claimant required such a limitations).

Finally, Plaintiff has failed to identify any record evidence that would support a finding that he required a different or greater off-task limitation.  *See* 20 C.F.R. § 416.912 (explaining Plaintiff has burden of proving he is disabled); *see also Howbert*, 2021 WL 2469546, at *7 (declining to reverse based upon insufficient RFC articulation where the claimant failed to come forth with record evidence showing that he required more restrictive limitations).  Plaintiff generally asserts that his "pain, which causes him to change position every few minutes, at will, along with problems focusing and concentrating clearly would have a significant impact upon his ability to remain on task . . . ."  (Pl.'s Statement of Errors 10, ECF No. 16.)  But even these allegations do not support Plaintiff's position that he might require long, unscheduled breaks. Moreover, the ALJ did not find Plaintiff's allegations regarding the intensity, persistence, and limiting effects of his symptoms to be consistent with the record evidence, which is a determination Plaintiff does not challenge.  (*See* R. 24–26 (relying upon medical records showing Plaintiff experienced relief from medication and surgery and could move normally, citing, *e.g.*, R. 534, 627, 679, 694, 811, as well as medical evidence showing Plaintiff's concentration was unimpaired, citing R. 503–10).)  And, as set forth above, the wording of the ALJ's RFC assessment, together with the record evidence, reflects that the ALJ included the off-task time to accommodate that Plaintiff may require significant—but less than 10% of the workday—off-task time to transition from sitting to standing.

## V.    DISPOSITION

From a review of the record as a whole, the undersigned concludes that substantial evidence supports the ALJ's decision.  Therefore, the undersigned **RECOMMENDS** that the Court **OVERRULE** Plaintiff's Statement of Errors and **AFFIRM** the Commissioner's decision.

## VI.    PROCEDURE ON OBJECTIONS

If any party objects to this Report and Recommendation, that party may, within fourteen days of the date of this Report, file and serve on all parties written objections to those specific proposed findings or recommendations to which objection is made, together with supporting authority for the objection(s).  A District Judge of this Court shall make a *de novo* determination of those portions of the Report and Recommendation or specified proposed findings or recommendations to which objection is made.  Upon proper objections, a District Judge of this Court may accept, reject, or modify, in whole or in part, the findings or recommendations made herein, may receive further evidence, or may recommit this matter to the Magistrate Judge with instructions.  28 U.S.C. § 636(b)(1).

The parties are specifically advised that failure to object to the Report and Recommendation will result in a waiver of the right to have the District Judge review it *de novo*, and also operates as a waiver of the right to appeal the decision of the District Court adopting the Report and Recommendation.  *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).

**IT IS SO ORDERED**.

/s/ *Chelsey M. Vascura*
CHELSEY M. VASCURA
UNITED STATES MAGISTRATE JUDGE